IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

PATRICK DEWEY SPARKS, )
                        )
           Petitioner, )     Case No. CV-04-562-S-EJL
                        )
v. )     **MEMORANDUM ORDER**
                        )
WARDEN R. BLADES, )
                        )
           Respondent. )
_____ )

       Pending before the Court in this habeas corpus action is Respondent's Motion for Summary Judgment. The Court previously dismissed some of Petitioner's claim on procedural grounds. The remaining claims to be determined on the merits are as follows: Claim One of the original Petition, ineffective assistance of counsel and conflict of counsel (to the extent that these claims were presented to the Idaho appellate courts) and Petitioner's *Miranda* claim from his Amendment (to the extent that this claim was presented to the Idaho appellate courts).

       The Court previously provided Petitioner with an extension of time in which to file a supplemental response, but he elected not to do so. See Order of November 13, 2006 (Docket No. 13). As a result, the Court considers the Motion fully briefed. The Court has

MEMORANDUM ORDER  1

reviewed the record and finds that oral argument is unnecessary.  Accordingly, the Court enters the following Order.

# I.

## MOTION FOR SUMMARY JUDGMENT

**A.**     **Standard of Law Governing Summary Judgment in the Habeas Corpus Context**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure.  Rule 11, Rules Governing Section 2254 Cases.  Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

Petitioner's case was filed after April 24, 1996, making it subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In order to obtain federal habeas corpus relief from a state court judgment under AEDPA, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

> 1.   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

MEMORANDUM ORDER  2

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 385 (2000), the United States Supreme Court explained that, to prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing *Williams v. Taylor*). Or, a petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled," *Ramdass v. Angelone*, 530 U.S. at 166 (citing *Williams v. Taylor*); however, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

MEMORANDUM ORDER  3

**B.**      **Discussion of Claim One of the Original Petition/Claim I of the Amended Petition**

The Court has determined that Claim One from the Petition shall be addressed with Claim I of the Amended Petition (Docket No. 13) and two cognizable "questions" or arguments Petitioner includes in his Amended Petition. These claims are as follows: (1) Claim One, Plaintiff's right to effective assistance of trial counsel was violated because his counsel had a conflict of interest as to State's Witness Julie Helleson and because his counsel failed to investigate and develop his defense, (2) Claim I, the right to counsel is so basic to a fair trial that it can never be considered harmless error; (3) prejudice should be presumed when there is a conflict of counsel; and (4) Petitioner's rights under the Confrontation Clause were violated because of counsel's failure to file motions or take actions to impeach the primary witness.

The facts of this case are as follows. After jury trial, Petitioner was convicted of robbery and use of a weapon during a robbery for the sentencing enhancement portion of the charge. *See State's Exhibit A-1*, at pp. 59-61. He was sentenced to ten years fixed and ten years indeterminate on the robbery conviction, and five years for the sentencing enhancement. *Id*. at pp. 63-65.

Claim One is an ineffective assistance and conflict of counsel issue. On the first day of trial, November 29, 1999, State's witness Julie Helleson testified that she was parked outside the 7-11 store where the robbery occurred, when she witnessed Petitioner enter the store, point a gun at the clerk, and put something in his pocket. *See State Court Record*, Exhibit A-4, pp.48-89. On the second day of trial, Petitioner's court-appointed public

MEMORANDUM ORDER  4

defender, Amil Myshin, informed the court that upon a review of a record search, he discovered that he represented Helleson in 1990 on a forgery charge.  Myshin stated that he did not remember it when he had cross-examined her the day before, but the record search "triggered some memories" and he recalled that during his representation of Helleson he "learned things about her that would go to her mental stability, her credibility."  *State Court Record*, Exhibit A-4, at pp. 179-180.  Myshin moved to withdraw and requested a mistrial on conflict of interest grounds. The trial court investigated the conflict of interest issue:

> Following the state's case in chief, the district court ordered defense counsel to disclose the nature of the confidential information in writing. After reviewing the written submission, the district court explained that the information would not have been admissible based on its remoteness in time and because its probative value would have been minor. The district court then sealed the written submission and marked it as part of the court's record.

*Sparks v. State*, 92 P.3d 542, 544-45 (Idaho Ct. App. 2004).

> Attorney Myshin's written submission regarding witness Julie Helleson was as follows:

> In October 1990, I represented Juile Helleson in a forgery case.  A jury trial was held and an acquittal issued.  The case involved a charge that the defendant had forged at least one check of a man who was either her boyfriend or employer.
> Ms. Helleson was emotionally unstable and hysterical.  She advised me that she was either in need of or was receiving psychiatric care.  My recollection is that she did not have a "photographic memory."  The employer or boyfriend testified that she had been dishonest with him and had been stealing from him.  He would have an opinion as to her reputation for truth or veracity.

*State Court Record*, Exhibit D-3, at p. 2.  The trial court denied Myshin's motion to withdraw for a mistrial.  *State Court Record*, Exhibit A-4, at pp. 201-02.

MEMORANDUM ORDER  5

1.    <u>Conflict of Interest</u>

Petitioner alleges that his trial counsel was ineffective due to his prior representation of Witness Julie Helleson.  In rejecting Petitioner's claim on appeal of the state post-conviction matter, the Idaho Court of Appeals relied on *Strickland v. Washington*, 466 U.S. 668 (1984), *Cuyler v. Sullivan*, 446 U.S. 335 (1980),[1] and *Mickens v. Taylor*, 535 U.S. 162 (2002).

Petitioner argues that the *Cuyler v. Sullivan* standard -- that once a defendant shows an actual conflict of counsel, prejudice is presumed, and the conviction must be reversed -- applied to his case.  The Idaho Court of Appeals rejected that argument, and relying on *Mickens v. Taylor*, concluded "that the *Cuyler* standard, which absolves the petitioner of the requirement of showing prejudice, is not applicable to cases that involve serial representation."  *State Court Record*, Exhibit D-6, at p. 6.  The Idaho Court of Appeals reasoned:

> In *Mickens*, the Supreme Court discussed the applicability of the *Cuyler* standard to conflict of interest cases originating not from multiple representation, but from obligations to former clients.  The Court recognized that various jurisdictions applied *Cuyler* to all kinds of alleged attorney ethical conflicts, including cases in which there is a conflict rooted in counsel's obligations to former clients.  *See id.* at 174.  After acknowledging this application, the *Mickens* Court explained that the language of *Cuyler* did not clearly establish or even support such an expansive application.  "Not all attorney conflicts present comparable difficulties," and the "Federal Rules of Criminal Procedure treat concurrent representation and prior representation

---

[1]  Some opinions refer to *Cuyler v. Sullivan* as "*Cuyler*," and others as "*Sullivan*" (the name of the inmate).  This court will refer to the case as *Cuyler v. Sullivan* to avoid further confusion.

different." *Mickens*, 535 U.S. at 175.  The *Mickens* Court concluded the discussion by explaining that whether *Cuyler* "should be extended to such cases remains, as far as the jurisprudence of this Court is concerned, an open question." *Id*. at 176.

*State Court Record*, Exhibit D-6, at p. 5.

As a result of its decision that *Cuyler v. Sullivan* did not apply to Petitioner's facts, the Idaho Court of Appeals applied the *Strickland* standard and determined that Petitioner failed to show prejudice, particularly, that he "failed to demonstrate the second prong -- that the outcome of his trial would have been different had his attorney not acted under this alleged conflict of interest." *Id*., at pp. 6-7.

In reaching this conclusion, the Idaho Court of Appeals reasoned:

> During the trial, Sparks's counsel argued that he could use the information he knew about the witness to impeach her testimony, especially relating to her credibility and the quality of her memory. However, testimony from other witnesses contradicted what she testified to at trial. The weight and value of her testimony was minimal. Additionally, there was overwhelming evidence of Sparks's guilt presented to the jury including the convenience store's surveillance video and Spark's confession to the robbery during an interview with the police.

*State Court Record*, Exhibit D-6, at 7.

A more detailed description of the other incriminating evidence is found in the State's responsive appellate brief on post-conviction review:

> [Julie Helleson] described the man as five foot five inches tall, thin, with sandy colored facial hair that she described as scruffy or unshaven, unable to determine whether he had a beard or goatee. Ms. Helleson testified the robber put something in his pocket and left the store, walking across the edge of the street, not near a white and yellow truck parked in the lot of the nearby, closed Pizza Hut restaurant. She described the robber's hat as a rambler or gambler style, flat rimmed and topped, cowboy hat, and the coast as long, below the

MEMORANDUM ORDER  7

waist, and grayish-green.  On cross-examination, she opined that Sparks' facial bone structure and profile was like that of the robber, but she did not associated a photograph of Sparks taken on the night of the robbery with the robber.

Clifford Parsons, a customer in the 7-Eleven, described the robber as a five foot, four or five inch man, 125 pounds, in a long sleeve shirt, a green shirt-type jacket, dark denim pants with a tear in the pant leg, a nylon stocking over his head, a goatee and no hat.  Bradley Dean, clerk of the 7-Eleven, described the robber as shorter, having a beard, pantyhose on his head, and wearing a baseball cap.  Bruce Daybell, another customer, who admitted being color blind, described the robber as having pantyhose on his head, a large dark overcoat, dark pants, a pistol with a long barrel, and a dark hat.

Police officers and a bloodhound tracked the robber to a nearby mobile home, and the bloodhound apparently alerted on Sparks.  A consent search of Sparks's trailer revealed a long black or dark colored coat, a pair of jeans with a hole in the knee, and a ball cap with crumpled cash in it, all similar to the descriptions of the store customer and store clerk and the images of the robber as captured on the 7-Eleven's video surveillance camera system.

Cash was found in Sparks's front pocket.  A lone shoe print in the dirt in the alleyway beside the 7-eleven was photographed with a digital camera and, upon comparison with Sparks's shoe was found to be similar in features.

Sparks's neighbors also testified that earlier on the evening of July 20, 1999, Sparks had announced his intent to rob the 7-Eleven at Ustick and Maple Grove, asking one neighbor for a ski mask and a gun, and later returning a long barreled .22 caliber semi-automatic pistol he had taken from another neighbor.  Sparks had announced to one neighbor that he had robbed the 7-Eleven and had gotten away with it.  The neighbor Sparks took the gun from testified that before the robbery Sparks had been wearing a black coat that ended below his buttocks and a hat.  Another neighbor testified that Sparks had been wearing dark clothes and a parka-like coat, and that he had blond hair and a goatee.  A detective testified that Sparks confessed to robbing the 7-Eleven during a custodial interview.  The 7-Eleven store surveillance tape of the robbery, showing a man dressed in a dark parka, ball cap, and dark jeans with a hole in one leg, was played for the jury.

*State Court Record*, Exhibit D-4, at pp. 13-14.

MEMORANDUM ORDER  8

It is clear from this more detailed description why the Idaho Court of Appeals determined that the "weight and value of [Julie Helleson's] testimony was minimal" and that "there was overwhelming evidence of Sparks's guilt." In light of this, this Court concludes that, under the second part of the habeas corpus statute focusing on the factual findings of the state court, relief is not warranted. Particularly, the Idaho Court of Appeals's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d)(2).

The Court now turns to the first part of the habeas corpus statute, whether Petitioner can show that the Idaho Court of Appeals's opinion was contrary to, or involved an unreasonable application of, the United States Supreme Court cases discussed above. *See* 28 U.S.C. § 2254(d)(1).

There is no question that Petitioner's case is one of successive, not simultaneous, representation. Attorney Myshin represented Witness Julie Helleson in 1990, and Petitioner's criminal trial was in 1999. *Mickens* suggests that *Cuyler v. Sullivan* should not be applied in cases where successive, not simultaneous, representation is at issue. It is often helpful to survey the opinions of the lower court to determine whether a particular state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

In the wake of the *Mickens* dicta, Courts of Appeals have applied the *Cuyler v. Sullivan* standard only in simultaneous representation cases or in successive representation cases where the two representations were closely related in time and substance. *See Hall v. U.S.*, 371 F.3d

MEMORANDUM ORDER  9

969, 974 (7th Cir. 2004) (*Cuyler v. Sullivan* applied where conflict involved successive representations that were just ten days apart and were also closely interrelated); *Moss v. United States*, 323 F.3d 445, 462 (6th Cir. 2003) (*Cuyler v. Sullivan* applied where the successive representations "occurred during the same proceedings and arose from identical facts"); *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006) (noting that the *Cuyler v. Sullivan* rule presuming prejudice has not been extended by the Supreme Court beyond cases in which an attorney has represented more than one defendant and declining to address the issue as unnecessary in that case).

These courts that have had opportunity to apply *Cuyler v. Sullivan* after issuance of the cautionary dicta in *Mickens* in successive or serial representation cases have applied it in the same manner as the Idaho Court of Appeals in Petitioner's case.  This uniformity in construing United States Supreme Court case law provides support for the conclusion that the Idaho Court of Appeals's decision that *Cuyler v. Sullivan* did not apply to Petitioner's set of facts was not an unreasonable application of, or contrary to United States Supreme Court precedent.

As the Sixth Circuit aptly concluded in *Smith v. Hofbauer*:

Because the question of whether the *Sullivan*'s lessened standard of proof for a claim of ineffective assistance of counsel based upon an attorney's conflict of interest for anything other than joint representation remains an "open question" in the jurisprudence of the Supreme Court, *Mickens*, 122 S.Ct. at 1246, and in fact was an open question at the time Petitioner's case was heard, Petitioner's claim fails because it is not based upon clearly established Supreme Court precedent as mandated by AEDPA.

312 F.3d 809, 817 (6th Cir. 2002).

MEMORANDUM ORDER  10

This Court further concludes that the Idaho Court of Appeals' decision that Petitioner's facts did not meet the *Strickland* standard for relief was not contrary to, or an unreasonable application of, *Strickland*. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally inadequate representation. To succeed on such a claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby. *Id.* at 684. Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* at 694.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id.* at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* The pertinent inquiry "is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998).

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either

prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

The facts in the record fully support the Idaho Court of Appeals's opinion that there was no prejudice resulting from Myshin's conflict of interest. Helleson's testimony was less accurate and less helpful than the witnesses who were in the store at the time of the robbery, the evidence pointing to Petitioner's guilt was plentiful and diverse, and Myshin's nine-year-old information about Helleson (including that she was *acquitted* of check forgery) would have been minimally helpful if not inadmissible.

Petitioner also argues that the right to counsel is so basic to a fair trial that it can never be considered harmless error. It is true that "it is unnecessary to add a separate layer of harmless-error analysis to an evaluation of whether a petitioner in a habeas case has presented a constitutionally significant claim for ineffective assistance of counsel." *Kyles v. Whitley*, 514 U.S. 419 (1995) (citation omitted). However, here, Petitioner's argument fails because there has been no showing of prejudice under *Strickland*. A finding of prejudice would supersede a harmless error analysis; a finding of no prejudice, as here, means that a court would not proceed to a harmless error analysis, even if it were appropriate to do so. Therefore, the Court rejects this argument.

Petitioner also argues that prejudice should be presumed when there is a conflict of counsel, an argument which was rejected by *Mickens* and every court that has addressed the issue after *Mickens*. He further argues that, even if conflict of counsel was not presumed, and if counsel perceived that a conflict existed and thereupon failed to file motions or take actions

MEMORANDUM ORDER  12

to impeach the primary witness, the Court should find prejudice based on his rights under the Confrontation Clause.

In *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), the Court explained that the Confrontation Clause does not mean that one has unlimited right to cross-examine a witness. Rather, the Court noted:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Id*. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).  A violation of the Confrontation Clause occurs only if the trial court has denied the jury "sufficient information to appraise the biases and motivations of the witness."  *U.S. v. Bleckner*, 601 F.2d 382 (9th Cir. 1979).

Here, counsel was not able to cross-examine Julie Helleson with nine-year-old information about her psychological state, her memory, and her credibility, including information that her boyfriend or employee thought she was dishonest (even though she was acquitted of the charge of forging her boyfriend or employee's check).  Even if exclusion of the evidence was error, it was harmless error in light of the facts set forth above.  *See Mayle*

*v. Felix*, 545 U.S. 644, 672 n.6 (2005) (Confrontation Clause errors subject to harmless error analysis).[2]

     2.    <u>Counsel's Failure to Properly Investigate and Develop Case</u>

The second half of Petitioner's original Claim One is whether Petitioner's trial counsel was ineffective for failing to properly investigate and develop his defense.  In his state post-conviction appeal, Petitioner presented the following factual issues in support of this claim:

> [Petitioner] alleged that trial counsel failed to "investigate, locate, and interview" witnesses, including witnesses who had written statements that they could not identify Mr. Sparks as the robber.  He alleged that trial counsel failed to interview his landlord, who would have testified that he was up to date on his rent, thus negating an intent to commit a robbery.  Mr. Sparks contended that his counsel was ineffective for failing to conduct fingerprint tests on the robbery weapon, which would have shown that his fingerprints did not exist on the weapon.

*State Court Record*, Exhibit D-3, at p. 11.

In Petitioner's case, the Idaho Court of Appeals determined that "[e]ven if Sparks's trial counsel was deficient with regard to interviewing witnesses and performing tests upon the robbery weapon, Sparks has not demonstrated how these would have changed the outcome

---

    [2] If a state court did not engage in a harmless error analysis, or if it applied the wrong standard, a federal district court on habeas corpus review applies the standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *Inthavong v. LaMarque*, 420 F.3d 1055, 1059-60 ( 9th Cir. 2005) (citing with approval *Cargle v. Mullin*, 317 F.3d 1196, 1220, 1224 (10th Cir. 2003)).  On collateral review, an error is not "harmless" is if "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  In determining whether an error is harmless, the Court reviews "what effect the error had or reasonably may be taken to have had upon the jury's decision."  *Id*. at 642-43.  An error is not harmless is a reviewing court is "in grave doubt" as to whether the error had "substantial and injurious effect or influence." *O'Neal v. McAninch*, 513 U.S. 432 (1995).

MEMORANDUM ORDER  14

of the trial." *State Court Record*, Exhibit D-6, at p. 7.  This Court agrees that Petitioner has

failed to show that counsel's alleged inadequacies prejudiced his case.  Petitioner has failed

to identify any witnesses to the robbery who were not called to testify. Petitioner's counsel

used the witnesses' prior statements to policy to impeach the witnesses as to their

identification of the robber.

Petitioner has failed to show how interviewing his landlord about the fact that he was

up to date on rent would have helped his case.  The evidence at trial showed that Petitioner's

roommate had moved out earlier that evening, and Petitioner had confessed to committing the

robbery because he needed the money to pay his child support.  Petitioner has no Affidavit

from the landlord to show what his testimony would have been.  *See State Court Record*,

Exhibit D-4, at p. 16.  Likewise, Petitioner failed to show that a fingerprint examination of the

gun would have revealed that his fingerprints were not on the gun, or that his fingerprints

would not have been obscured by the owner handling the gun upon Petitioner returning it to

the owner.  *Id*. at pp. 16-17.

Petitioner has shown no particular prejudice to his defense that occurred as the result

of any of the foregoing alleged errors.  In addition, the asserted errors are inconsequential in

light of the other overwhelming evidence in the record that Petitioner committed the robbery.

Therefore, Petitioner has not shown that the Idaho Court of Appeals' opinion was contrary

to or an unreasonable application of *Strickland*.

MEMORANDUM ORDER  15

**C.      Claim III of Amended Petition**

The only remaining portion of Claim III is Petitioner's *Miranda* claim. The other portions are procedurally defaulted.  Therefore, the Court addresses only the *Miranda* claim. Petitioner filed a motion to suppress all of his statements made to police on grounds that he was intoxicated, and therefore unable to knowingly, voluntarily, and intelligently waive his *Miranda* rights.  *State Court Record*, Exhibit A-1, at p. 38 & Exhibit A-3.  The trial court held an evidentiary hearing, and then denied the motion to suppress.  *State Court Record*, Exhibit A-1, pp. 40-41 & Exhibit A-3.

The Idaho Court of Appeals identified the following evidence to support its conclusion that Petitioner's *Miranda* waiver was valid:

> According to the evidence presented at Sparks' suppression hearing, the officer who arrested Sparks noticed the smell of alcohol on his breath, but the officer also noted that Sparks was able to follow directions and had full coordination.  At the police station, most of Detective Smith's interview of Sparks was tape recorded.  The audio recording was placed in evidence at the suppression hearing and is before this Court on appeal.  Smith began the interrogation by asking Sparks numerous questions to determine his mental state.  Smith asked Sparks for his name, date of birth, and social security number.  Sparks gave quick, coherent and correct answers to the questions. Smith then asked Sparks whether he was under the influence of drugs or alcohol.  Sparks stated that even though he had been drinking that night and was still drunk, he understood the proceedings.  Smith then reminded Sparks that if he did not understand a question, he should ask Smith to repeat the question.  Sparks was also told that he could stop the questioning if he wished to.  Smith then read sparks his *Miranda* rights.  When asked if he understood his rights, Sparks responded affirmatively.  When asked if he wished to proceed with questioning, Sparks stated that he wished to proceed.  Only after all of these preliminary steps were taken to determine whether Sparks was coherent and able to understand his circumstances, did Detective Smith begin asking Sparks questions about the robbery.  The audio tape of Detective Smith's interview of Sparks shows that, although Sparks asserted that he was drunk, his

MEMORANDUM ORDER  16

speech was not slurred, he was not slow to respond to the detective's questions, and his responses were lucid and well articulated.   The totality of these circumstances supports the district court's determination that Sparks' waiver of his *Miranda* rights was voluntary, knowing and intelligent.

*State Court Record*, Exhibit C-5, at pp. 3-4.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Court held that prior to subjecting a

suspect to custodial interrogation, law enforcement officers must inform the suspect that he

has the right to remain silent and that he has the right to counsel.  If a suspect knowingly and

intelligently waives his right to counsel after receiving *Miranda* warnings, law enforcement

officers may question the suspect.  *North Carolina v. Butler*, 441 U.S. 369 (1979); *Oregon

v. Elstad*, 470 U.S. 298 (1985).

A waiver is knowing and intelligent if, under the totality of circumstances, it is made

with a "full awareness of both the nature of the right being abandoned and the consequences

of the decision to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The United States Supreme Court has held that in the absence of coercive police conduct, a

criminal defendant's mental state alone cannot make his confession involuntary. *Colorado v.

Connelly*, 479 U.S. 157, 163-67 (1986).  On that basis, other courts have held that a

defendant's intoxication alone does not support a finding of involuntariness and "is relevant

only to the extent it made him more susceptible to mentally coercive police tactics." *Andersen

v. Thieret*, 903 F.2d 526, 530 n.1 (7th Cir. 1990).  The Ninth Circuit has held that a person's

*Miranda* rights are not violated where "the surrounding circumstances, including [the

person's] intoxication, were insufficient to overcome his free will and cause his first statement

MEMORANDUM ORDER  17

to be the product of anything other than a rational mind." *Medeiros v. Shimoda*, 889 F.2d 819, 823 (9th Cir. 1989).

The only allegation of police coercion was that "[a] coercive atmosphere was present as two officers participated in the interrogation." *State Court Record*, Exhibit C-3, at p. 7. Petitioner has pointed to no words, body language, physical touching, or anything else that would indicate coercion; the mere presence of two officers does not make an interview coercive. While Petitioner admitted to being drunk, he responded appropriately to questions about himself and questions regarding his *Miranda* rights. The police detective conducting the interview, a twenty-year veteran, testified that because Petitioner smelled of alcohol, he made special inquiry of Petitioner's ability to understand. *State Court Record*, Exhibit A-3, at pp. 19-20. Petitioner indicated that he understood his rights regarding speaking with law enforcement officers. Petitioner's indication that he understood his rights is trustworthy because it is supported by the fact that he was not slow to respond to the detective's questions, and his responses were lucid and well articulated.

Based on these facts, the Court concludes that Petitioner has failed to show that the Idaho Court of Appeals's decision was contrary to, or an unreasonable application of, clearly established federal law, or that it was based upon an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1) & (2). As a result, this claim shall be dismissed with prejudice.

**D.     Instructions for Appeal**

Before a petitioner may appeal from the dismissal of a 28 U.S.C. § 2254 petition, he must first obtain a certificate of appealability by filing a request for a certificate of

MEMORANDUM ORDER  18

appealability with the federal district court.   28 U.S.C. § 2253(c).   Until a certificate of

appealability has been issued, an appellate court lacks jurisdiction to rule on the merits of an

appeal.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).   A federal district court will not

issue a certificate of appealability absent "a substantial showing of the denial of a

constitutional right."   28 U.S.C. § 2253(c)(2).   A petitioner satisfies this standard by

demonstrating that reasonable jurists would find debatable both the merits of the constitutional

claims and any dispositive procedural rulings by the district court.  *Miller-El v. Cockrell*, 537

at 336 (2003).


# II.

# ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for

Summary Judgment (Docket No. 19) is GRANTED.  Petitioner's Petition is dismissed with

prejudice.


DATED:  **March 16, 2007**

Honorable Edward J. Lodge
U. S. District Judge


MEMORANDUM ORDER  19